LOTTIE R. WILLIAMS *v.* STEPHEN ROBINSON

[No. 36, January Term, 1944.]

*Decided March 24, 1944.*

The cause was argued before SLOAN, C. J., DELAPLAINE, COLLINS, MARBURY,. GRASON, and BAILEY, JJ.

*Dallas F. Nicholas,* with whom were *Nicholson & Gosnell,* on the brief, for the appellant.

*W. A. C. Hughes, Jr.,* for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

This suit was brought by Stephen Robinson, of Baltimore, in 1943 to annul two deeds which he had given to his only child, Lottie R. Williams, of Syracuse, New York, in 1937.

On March 21, 1937, upon the death of his second wife, complainant, aged 68, became sole owner of two houses in Baltimore; and he told his daughter, who came to the funeral, that he wanted her to have them. On March 30 he engaged an attorney to prepare deeds reserving the life estate for himself and conveying the remainder to his daughter. On March 31 be executed the deeds and they were duly recorded. On July 13, 1942, complainant, then aged 73, married a third time. Thereafter, he requested his daughter to deed the houses back to him. About a year later he filed his bill of complaint alleging that he had executed the deeds in consideration of his daughter's promise that she would move back to Baltimore to live with him. At the hearing she denied that she had made any such promise, and her father swore that he could not remember any such conversation. The court held that, while the deeds were not the result of any contract, promise or assurance, a confidential relationship

existed between the parties, and the father had evidently intended to execute a will rather than deeds. From the decree declaring the deeds null and void, the daughter appeals to this court.

It is a familiar doctrine that whenever there is a confidential or fiduciary relation between two parties wherein trust and confidence are reposed on one side and influence and control are exercised on the other, a court of equity will interpose on the ground of public policy to prevent the weaker party from stripping himself of his property. In this class of cases of constructive fraud, there is often found an intermixture of actual fraud, such as deceit, imposition or unconscionable advantage. But the doctrine on which the courts grant relief in such cases is primarily designed as a protection against the consequence of delusion, overweening confidence, implicit acquiescence and precipitate judgment. Justice Story said: "It is undoubtedly true * * * that it is not upon the feelings which a delicate and honorable man must experience, nor upon any notion of discretion, to prevent a voluntary gift or other act of a man whereby he strips himself of his property, that courts of equity have deemed themselves at liberty to interpose in cases of this sort. They do not sit, or affect to sit, in judgment upon cases as *custodes morum* enforcing the strict rules of morality. But they do sit to enforce what has not inaptly been called a technical morality. If confidence is reposed, it must be faithfully acted upon and preserved from any intermixture of imposition. If influence is acquired, it must be kept free from the taint of selfish interest, and cunning, and overreaching bargains." 1 *Story, Equity Jurisprudence,* 12th Edition, Sec. 308.

In the relation of parent and child, the parent ordinarily occupies the dominant position. Because of the implicit trust and confidence which a child usually reposes in its parents, and the opportunities so often presented for undue influence and imposition, the court carefully examines any conveyance which a child makes to a parent,

and unless it is clearly shown that the child possessed the requisite mental capacity and acted without any coercion or undue influence, the conveyance will be set aside. *Simpson v. League,* 110 Md. 286, 72 A. 1109; *Taylor v. Pivec,* 149 Md. 526, 531, 131 A. 757. On the other hand, it is well settled that no presumption of fraud arises when a gift is made by parent to child, if the parent is mentally competent and understands the effect of his act, and therefore the burden of proof is on the person seeking to invalidate the gift. *Henry v. Leech,* 123 Md. 436, 91 A. 694. It is definitely held in Maryland that when a competent person, in pursuance of a long cherished purpose, makes a voluntary gift to a favorite relative, whom he has raised from childhood and with whom he has lived on intimate and affectionate terms, there is no presumption that the donee exerted undue influence, and the court should not set such a deed aside except upon strong and conclusive proof. *Eakle v. Reynolds,* 54 Md. 305, 311.

If, however, the natural position is reversed by the influence of time so that the parent on account of old age and infirmity relies heavily upon the child for care and protection or for guidance in business affairs, then there exists a confidential relationship where the child acts as a guardian for the parent, and if there is an improvident gift from the parent to the child the court presumes that it was obtained by fraud, and will hold the conveyance void, unless the child shows such facts as will satisfy the court that he understood the effect of his act and there was no imposition. *Highberger v. Stiffler,* 21 Md. 338, 83 Am. Dec. 593; *Beinbrink v. Fox,* 121 Md. 102, 88 A. 106; *Upman v. Thomey,* 145 Md. 347, 125 A. 860; *Gaggers v. Gibson,* 180 Md. 609, 26 A. 2d 395; *Messick v. Pennell,* 182 Md. 531, 35 A. 2d 143; *Hensan v. Cooksey,* 237 Ill. 620, 86 N. E. 1107; *Smith v. Smith,* 84 Kan. 242, 114 P. 245, 35 L. R. A., N. S., 944. But the instant case does not show a confidential relationship between the parties. There is no evidence to show that the father was so weakened in mind and body that he did not comprehend the purpose of the deeds. Five years after the gift, he mar-

ried again. Six years after the gift, he admitted on the witness stand in the court below that he had "requested that the deeds be drawn." The law presumes every man to be capable of making a valid deed or contract. If a complainant in a suit to annul a deed relies upon lack of mental capacity, he must prove it by a preponderance of the evidence. *Grove v. Taylor,* 143 Md. 184, 121 A. 923; *Colburn v. Ellers,* 160 Md. 104, 153 A. 14.

The deeds now before the court recite a consideration of five dollars and love and affection. They do not disclose any promise of the daughter that she would move from Syracuse to Baltimore. It is a general rule that a good consideration, which is defined as one of blood or natural love and affection, is sufficient in a deed or gift, although not sufficient in an executory contract, and a deed or other completed gift *inter vivos* from a parent to a child is irrevocable. *Dugan v. Gittings,* 3 Gill 138, 156, 43 Am. Dec. 306. In this case the father's action in signing and acknowledging the deeds and placing them on record raised a presumption of delivery, which prevails in the absence of evidence to the contrary. *Chambers v. Chambers,* 227 Mo. 262, 127 S. W. 86. It has been held that when a grantor executes and acknowledges a deed and delivers it unconditionally to the grantee, or some one acting for him, the conveyance is completed, and the title passes. *Krach v. Carson,* 150 Md. 659, 133 A. 306. Indeed, we recognize that even a parol gift by a father to his child, while not enforceable at law under the Statute of Frauds, becomes irrevocable in equity after the child has taken possession of the land and made improvements of considerable extent, because to allow the donor to avoid the performance of his undertaking would operate as a fraud upon the donee. *Hardesty v. Richardson,* 44 Md. 617, 22 Am. Rep. 57.

Therefore, the burden was on complainant to show such facts as would constitute constructive fraud. This he has failed to do. In the first place, he had the benefit of counsel. It is not indispensable to prove that a donor had competent and independent advice in order to sus-

tain a conveyance, even where a confidential relationship existed. It is necessary only to show that the donor understood his conveyance, and that there was no undue influence, duress or imposition by the donee. *Todd v. Grove,* 33 Md. 188, 195; *Zimmerman v. Frushour,* 108 Md. 115, 69 A. 796, 16 L. R. A., N. S., 1087. In this case, however the father obtained professional advice, and the natural inference is that his action was voluntary and deliberate. Moreover, his gift was not improvident. While conveying the remainder estates to his daughter, he reserved the properties for himself during his lifetime. His only child was the natural object of his bounty, and the gift was in accordance with parental instincts and moral obligations.

Finally, the evidence indicates that complainant understood the significance of his deeds. After executing them, he took his daughter to a bank, where he closed an account in the names of himself and his wife, and opened a new account in the names of himself and his daughter. At no time did he make any effort to cancel the deeds until after he married again more than five years afterwards. A court of equity will not annul a deed on the ground of constructive fraud where the action of the grantor was voluntary and deliberate. The law concedes to every person of sound mind the right to dispose of his property in any lawful manner that he may deem proper; and after he has voluntarily conveyed property rights without fraud or imposition upon him, equity will not annul the deed simply because he later changed his mind or regretted the conveyance. It would be a dangerous doctrine to hold that a deed, valid and absolute on its face and duly on record for a number of years, could be nullified on the mere allegation of the grantor that he was not satisfied with the legal effect of the deed, but desired something different. *Simpson v. League,* 110 Md. 286, 72 A. 1109; *Allen v. Safe Deposit & Trust Co.,* 177 Md. 26, 7 A. 2d. 180; *Cecil v. Beaver,* 28 Iowa 241, 4 Am. Rep. 174.

*Decree reversed, and bill of complaint dismissed, with costs.*